# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Joseph Howard Yennie,                    Case No. 18-cv-1626 (WMW/ECW)

          Plaintiff,

   v.

                  **REPORT AND RECOMMENDATION**

Terrance M. Walters, individually;
Karrie Kelly, individually; and
Debra A. Jacobson, individually,

          Defendants.

---

This case is before the Court on a Motion to Dismiss brought by The Honorable Terrance M. Walters and The Honorable Debra A. Jacobson (collectively, "Judicial Defendants"). (Dkt. No. 8.) *Pro se* Plaintiff Joseph Howard Yennie ("Plaintiff"), apparently a follower of the "Sovereign Citizens" movement, filed a Complaint alleging "Denial of prerogative rights in re Expatriation Act of 1868."[1] (Dkt. No. 1.) The Judicial Defendants moved to dismiss the Complaint as to the claims against them pursuant to

---

[1] "Sovereign citizens 'are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group.'" *Leiter v. Kenney*, No. CV 15-2336 (JNE/BRT), 2016 WL 7191544, at *2 (D. Minn. Oct. 27, 2016) (quoting *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013) (citing "Sovereign Citizens: A Growing Domestic Threat to Law Enforcement," FBI Law Enforcement Bulletin (Sept. 2011))), *report and recommendation adopted as modified sub nom. Leiter v. Nickrenz*, No. 15-CV-2336 (JNE/BRT), 2016 WL 7191614 (D. Minn. Dec. 12, 2016), *appeal dismissed*, 697 F. App'x 470 (8th Cir. 2017).

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  (Dkt. No. 8.) The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons stated below, the Court recommends that the Motion be granted and Plaintiff's claims against the Judicial Defendants be dismissed.  The Court also recommends that Plaintiff's claims against Kelly be dismissed for lack of subject matter jurisdiction.  Finally, the Court recommends that the dismissal be with prejudice.

## I.    BACKGROUND

The Complaint, filed on June 12, 2018, alleges only the following:

> Comes now, Joseph Howard; Yennie by special visitation;
> Respondents have denied Petitioner of his rights as a natural born American state national to expatriate from the UNITED STATES and the STATE OF MINNESOTA by their abandoned paper by their bringing a charge against Joseph Howard; Yennie in a corporate manner under corporate rules or regulations; Respondents shall dismiss all actions in violation of petitioner's prerogative rights.
> Brief shall follow.

(Dkt. No. 1.)

Defendants (referred to as "Respondents" in the Complaint) are three persons whom Plaintiff claims to be suing in their individual capacity.  The Judicial Defendants are Minnesota state court judges.  (Dkt. No. 12 at 1.)  Karrie Kelly, the third Defendant, is a Wabasha County Prosecutor.  (Dkt. No. 5 ¶ 3.)  Plaintiff (referred to as "Petitioner" in the Complaint) appears to be seeking relief based on a "charge" brought against him in state court.  (Dkt. No. 1.)  The Complaint does not specify what the "charge" is.

2

On the Civil Cover Sheet filed with the Complaint, Plaintiff asserted that the basis of the Court's jurisdiction is diversity and checked a box indicating he is a citizen of a foreign nation.  (Dkt. No. 1-1.)  Plaintiff listed an address for himself in Goodhue, Minnesota.  (*Id.*)  For his monetary demand, Plaintiff indicated that the amount of the case was "to be determined."  (*Id.*)  Plaintiff identified the Nature of Suit as "Other Civil Rights," but did not allege or indicate that his Complaint was brought pursuant to 42 U.S.C. § 1983.  (Dkt. Nos. 1, 1-1.)  However, the Complaint does appear to seek injunctive relief by demanding "Respondents shall dismiss all actions in violation of petitioner's prerogative rights."  (Dkt. No. 1.)

Kelly filed an Answer on June 27, 2018.  (Dkt. No. 5.)  On August 3, 2018, the Judicial Defendants moved to dismiss the Complaint as to the claims against them under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  (Dkt. No. 8 at 1.)  Because the Complaint does not identify the "charge," the Judicial Defendants attempted to identify the "charge" in their Motion based on a search of publicly available court records.  (*See* Dkt. No. 11 at 2.)  The Judicial Defendants filed a Register of Actions for an unsuccessful Wabasha County contract case brought by Plaintiff in 2015 over which Judge Walters presided.[2]

---

[2]    Generally, the Court does not consider materials "outside the pleadings" on a motion to dismiss, *see* Fed. R. Civ. P. 12(d), but the Court "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings," *see Little Gem Life Sci., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)).  The state court Register of Actions and other documents are matters of public record and may be properly considered in the instant Motion.

(Dkt. No. 12-1, Ex. A.)  The Judicial Defendants also filed two Judicial Findings of Fact and Conclusions of Law (dated October 10, 2017 and April 24, 2018) that certain "UCC Financing Statements" Plaintiff filed against Judge Walters were "NOT [] legally valid financial statement[s] or other record[s]," and ordering their removal.  (*Id.*, Exs. B-C.)

The Motion is based on "the *Rooker-Feldman* doctrine, *Younger* Abstention, lack of subject-matter jurisdiction, absolute judicial immunity, Eleventh Amendment immunity, as well as the failure to state a claim upon which relief may be granted."  (Dkt. No. 11 at 13.)  The same day, the Clerk's Office received two "Notice[s] of Formal Objection" from Plaintiff.  (Dkt. Nos. 15, 16.)  The first appears to object to the Judicial Defendants' representation by the Minnesota Attorney General's Office on the ground that the Judicial Defendants' complained-of conduct was allegedly outside of their official capacity.  (Dkt. No. 15.)  The second, apparently a response to a letter from counsel for the Judicial Defendants requesting a meet-and-confer before filing their Motion, seems to object to the assertion of judicial immunity by the Judicial Defendants. (Dkt. No. 16.)  The Clerk's Office received a third "Notice of Formal Objection" on August 9, 2018, apparently in response and in objection to the Motion.  (Dkt. No. 17.)

The Judicial Defendants filed a reply in support of their Motion on August 10, 2018.  (Dkt. No. 18.)  The same day, Plaintiff filed a "Brief and Affidavit in Support of Brief" "in furtherance of proof in re complaint."[3]  (Dkt. Nos. 21, 22.)  According to the

---

[3]    Plaintiff stated "Brief shall follow" in his Complaint.  (Dkt. No. 1.)  Because Plaintiff is *pro se*, the Court considers the allegations in the Brief as well as in the Complaint for purposes of the Motion.  The brief is dated June 18, 2018, but was not received by the Clerk's Office until August 10, 2018.  (Dkt. No. 21.)

Brief, Plaintiff seeks damages of $1,361,956.52 for alleged "False Arrest and False Imprisonment of an American state national, expatriate of the UNITED STATES under corporate rules and regulations."  (Dkt. No. 21 ¶¶ 27-28.)  Exhibit A is a compilation of documents that Plaintiff contends show his expatriation.  (Dkt. No. 21 ¶ 22; Dkt. No. 22-2, Ex. A (ECF pages 1-14).)[4]

The Brief lists the following three "offenses of respondent(s)":

**OFFENSE I**      By bringing actions under corporate rules and regulations of the STATE OF MINNESOTA against an expatriate freedman.

1.  Respondent(s) brought Case File no. 79-CR-18-319 under corporate rule against Petitioner. See Exhibit "F"

**OFFENSE II**      False arrest and false imprisonment under corporate rules and regulations.

1.  Respondent(s) caused false arrest and false imprisonment of Petitioner on April 9, 2018 6:37PM until April 10, 2018 3:30 PM when Petitioner was free and at liberty once more. See Exhibit "F"

**OFFENSE III**      Respondent(s) have created more issues of rules and regulations which do not apply to Petitioner. See Exhibit "G"

1. Respondent(s) have created new offensive issues under their Case File No. 79-CV-18-481 by Documents abandoned at 24878 CTY 9 Blvd East Goodhue, Minnesota on or about June 8, 2018.

(Dkt. No. 21 ¶¶ 29-36.)

The Brief and supporting documents clarify what is meant by the "charge" in the Complaint.  Exhibit F to Plaintiff's Affidavit, referenced in "Offense I" and "Offense II,"

---

[4]      The Court uses ECF page numbers to identify the Exhibits to Plaintiff's Affidavit because the headings automatically inserted by the CM/ECF system render the exhibit labels difficult to read.

is a copy of the case file for *State v. Yennie*, Case No. 79-CR-18-319 (Wabasha Cty. Dist. Ct.), which is a criminal case charging Plaintiff with two counts of Violation of Restraining Order.  (Dkt. No. 21 ¶¶ 30-31, 32-33; Dkt. No. 22-2, Ex. F (ECF pages 38-44).)  The Statement of Probable Cause states that Judge Walters issued the underlying harassment restraining order.  (Dkt. No. 22-2, Ex. F at ECF page 40.)  Exhibit G, referenced in "Offense III," is an Order Granting Petition for Ex Parte Harassment Restraining Order against Plaintiff issued by the Wabasha County District Court in Case No. 79-CV-18-480.[5]  (Dkt. No. 22-2, Ex. G (ECF page 45).)  Exhibits B to E are "Notices" challenging Plaintiff's arrest and detention in the criminal case and the jurisdiction of the state court based on his purported expatriation and other sovereign citizen theories.  (*See* Dkt. No. 22-2, Exs. B-E (ECF pages 15-37).)  Plaintiff apparently sent these "Notices" to the Goodhue County law enforcement officers who arrested him in Pine Island, Minnesota, certain Goodhue County and Wabasha County prosecutors (including Kelly), and the "Assigned Judge" in the criminal case (who is not one of the Judicial Defendants.  (*See id.*)  Accordingly, the Court understands the "charge" in the Complaint to be the *State v. Yennie* criminal case brought against Plaintiff for his alleged violation of at least one harassment restraining order.[6]

---

[5]    The Affidavit references "Case File No. 79-CV-18-481" in "Offense III," but Exhbit G is captioned "79-CV-18-480."  (*Compare* Dkt. No. 21 ¶¶ 35-36, *with* Dkt. No. 22-2, Ex. G (ECF page 45).)
[6]    Accordingly, the Court does not further consider the contract and "UCC Financing Statements" cases other than to note that *Rooker-Feldman* would also apply to claims brought by Plaintiff based on those cases.

On August 17, 2018, the Court set a deadline for responding to the Motion of September 7, 2018 and a deadline for the reply of September 21, 2018. (Dkt. No. 25.) Plaintiff declined to file additional briefing. (Dkt. No. 27.) The Judicial Defendants filed an additional memorandum in support of their Motion. (Dkt. No. 28.) They attached Registers of Actions for (1) the pending criminal case; (2) civil harassment case 79-CV-18-481, which is a companion case to 79-CV-18-480; and (3) civil harassment case 79-CV-17-217, which is a companion case to 79-CV-18-480. (Dkt. No. 29-1, Exs. A-C.) Kelly is prosecuting the criminal case (Dkt. No. 29-1, Ex. A), Judge Jacobson appears to have issued the harassment restraining order in the civil harassment case 79-CV-18-481 (*id.*, Ex. B), and Judge Walters appears to have issued the harassment restraining order in the civil harassment case 79-CV-17-217 (*id.*, Ex. C). Neither of the Judicial Defendants are presiding over the criminal case, nor did they sign the criminal complaint or order for detention of Plaintiff. (*See* Dkt. No. 22-2, Ex. F (ECF pages 39-42); Dkt. No. 29-1, Ex. A.) The civil harassment cases 79-CV-18-480, 79-CV-481, and 79-CV-17-217 have all been disposed of and are no longer pending. (*See* Dkt. No. 22-2, Ex. G (ECF page 45); Dkt. No. 29-1, Exs. B, C.)

## II.   LEGAL STANDARD

### A.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations omitted). Thus, subject matter jurisdiction "is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922

7

F.2d 492, 493 (8th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge whether the court has subject matter jurisdiction to hear the matter. *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008). When considering a Rule 12(b)(1) motion, a district court may consider matters outside the pleadings. *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

Further, federal courts "are under an independent obligation to examine their own jurisdiction." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *see also Thomas v. Basham*, 931 F.2d 521, 523 (8th Cir. 1991) ("In fact, jurisdiction issues will be raised sua sponte by a federal court when there is an indication that jurisdiction is lacking, even if the parties concede the issue."). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## B.    Pleading Standard

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet this standard and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a complaint is not required to contain detailed

factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (citation omitted).

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[t]hough *pro se* complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced."  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted); *see also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and stating "*pro se* complaint must contain specific facts supporting its conclusions").

As the Eighth Circuit has explained:

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.  That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

*Stone*, 364 F.3d at 915.  Consequently, a court "'will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded.'" *Id.* (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  Further, complaints that are unintelligible, rambling, and do not set forth a short and plain statement of the claim, or any claim for which relief may be granted, may be dismissed pursuant to

Federal Rules of Civil Procedure 8(a) and 12(b)(6).  *See White v. United States*, 588 F.2d

650, 651 (8th Cir. 1978) (per curiam).

## III.    DISCUSSION

The Court first addresses the bases for subject matter jurisdiction asserted by

Plaintiff with his Complaint.  Then, the Court then analyzes the merits of the Judicial

Defendants' Motion to Dismiss.  Finally, the Court considers whether Plaintiff's claims

against Kelly should be dismissed for lack of subject matter jurisdiction.

**A.    Plaintiff's Alleged Bases for Subject Matter Jurisdiction**

**1.    Diversity Jurisdiction**

Plaintiff alleges diversity jurisdiction in this action.  (Dkt. No. 21 at 1.)  Diversity

jurisdiction stems from Article III, Section 2 of the Constitution, which provides in part

that the judicial power of the United States shall extend to controversies "between a

State, or the Citizens thereof, and foreign States, Citizens or Subjects."  U.S. Const. art.

III, § 2.  The statute governing diversity jurisdiction, 28 U.S.C. § 1332(a), requires

complete diversity among the parties and an amount in controversy exceeding $75,000.

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

Here, there is not complete diversity.  Plaintiff, who resides in Goodhue County,

Minnesota, contends he is a citizen of a foreign state.  (Dkt. No. 1-1.)  According to

Plaintiff, he is an "American state national" rather than a U.S. citizen because he

allegedly expatriated under the Expatriation Act of 1868.  (Dkt. Nos. 1; *see also* Dkt. No.

21 ¶ 14.)  The Expatriation Act "is intended to provide protections for naturalized

American citizens abroad" (which Plaintiff is not), *Klaudt v. Dooley*, No. CIV 10-4091-

10

KES, 2010 WL 5391571, at *4 (D.S.D. Dec. 22, 2010), and the concept that Plaintiff is an "American state national" has "'no conceivable validity in American law,'" *Fisherman v. State*, A15-1903, 2016 WL 3961939, at *3 (Minn. Ct. App. July 25, 2016) (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)). As Plaintiff and Defendants all reside in Minnesota (Dkt. No. 1-1), complete diversity is lacking. *Peroceski v. Bryant-Wolf*, No. CIV. 07-3930 JRT/JSM, 2008 WL 880004, at *4 (D. Minn. Mar. 28, 2008) ("Here, it appears that both Plaintiff and Defendant are Minnesota residents, so diversity of citizenship obviously does not exist.") (footnote omitted). There is no diversity jurisdiction.

### 2. Expatriation Act of 1868

Plaintiff also appears to assert federal question jurisdiction under the Expatriation Act of 1868. (Dkt. No. 21 ¶ 19.) Plaintiff claims he is an "American state national" because he allegedly expatriated under that Act, and therefore the state court "charge" against him is a violation of his "right to expatriate." (*See id.* ¶¶ 14-15, 19.) Contrary to Plaintiff's belief, "the Expatriation Act does not provide rights to someone who has renounced his United States citizenship," and Plaintiff, who resides in and was arrested, charged, and detained in Minnesota, "'cannot somehow exempt himself or immunize himself from the application of state law . . . by declaring himself a non-citizen.'"[7]

---

[7] Moreover, as explained by the *Klaudt* court, the Expatriation Act of 1868 has since been amended:

The Expatriation Act of 1907 amended the 1868 Act to define the manner in which a United States citizen could lose his or her citizenship. Act of Mar. 2, 1907, 34 Stat. 1228. By 1940, the 1907 Act had been repealed and the

*Klaudt*, 2010 WL 5391571, at *4 (quoting *Estate of Casimir v. New Jersey*, No. 09-4004, 2009 WL 2778392 at *5 (D.N.J. Aug. 31, 2009)).  Accordingly, Plaintiff's claim for a violation of his "right to expatriate" under the Expatriation Act is frivolous and does not provide a basis for subject matter jurisdiction.  *See Sassower v. Dosal*, 744 F. Supp. 908, 909 (D. Minn. 1990) ("Jurisdiction is deemed not to lie where the federal claim asserted is . . . frivolous."); *see also Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ("[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under . . . federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous.").

**B.    *Rooker-Feldman***

To the extent Plaintiff alleges any other federal claims against the Judicial Defendants, the Judicial Defendants argue that the Court lacks subject matter jurisdiction over such claims under the *Rooker-Feldman* doctrine.  (Dkt. No. 11 at 5-6.).  "The *Rooker-Feldman* doctrine is named after two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)."  *Canal Capital Corp. v. Valley Pride Pack, Inc.*, 169 F.3d 508, 512 (8th Cir. 1999).  "The *Rooker-Feldman* doctrine 'recognizes that, with the exception of

---

Expatriation Act of 1868 was reenacted. 8 U.S.C. § 808.  In 1940, Congress enacted the Nationality Act, 54 Stat. 1137, to codify the nationality laws and expanded the grounds for loss of nationality.  The Immigration and Nationality Act of 1952, 18 U.S.C. § 1481, further expanded the grounds for loss of citizenship and eliminated some of the language [in the Expatriation Act of 1868].

2010 WL 5391571, at *4.

habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments.'" *King v. City of Crestwood, Missouri*, 899 F.3d 643, 647 (8th Cir. 2018) (quoting *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 492 (8th Cir. 2000)). The doctrine also precludes the Court from obtaining jurisdiction over claims "inextricably intertwined" with state court decisions. *District of Columbia v. Feldman*, 460 U.S. 462, 483 (1983). "A federal claim is inextricably intertwined with a state court judgment when 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Canal Capital*, 169 F.3d at 512 (quoting *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997)).

Plaintiff asks the Court to dismiss the criminal case brought against him for alleged violations of the Harassment Restraining Orders and to award damages based on his arrest and detention pursuant to that criminal charge. (Dkt. No. 1 ("Respondents have denied Petitioner of his rights . . . by their bringing a charge against [Plaintiff]."); *see also* Dkt. No. 21 ¶¶ 29-36 (setting forth "Offenses").) Plaintiff's claims here are "inextricably intertwined" with the state court judgments in the civil harassment cases because the relief he requests (dismissal of the criminal case and an award of damages for his arrest and detention) would effectively reverse the state court's decisions to issue the Harassment Restraining Orders and void those Orders. *Canal Capital*, 169 F.3d at 512. Further, if Plaintiff is asking the Court to vacate (or somehow reverse) the underlying harassment restraining orders, that request also would fall under *Rooker-Feldman* as it would plainly reverse the state court's decision to enter those Orders. Consequently, the

Court lacks subject matter jurisdiction over the Complaint under the *Rooker-Feldman* doctrine, and recommends dismissal on that ground.

### C.   *Younger* Abstention

The Judicial Defendants also assert the Court lacks subject matter jurisdiction under the *Younger* Abstention doctrine.  (Dkt. No. 11 at 6-7.)  In *Younger v. Harris*, the Supreme Court held that a federal court should abstain from exercising jurisdiction in cases where there is a parallel, pending state criminal proceeding.  401 U.S. 37, 43-46 (1971).  "The Supreme Court has extended *Younger* to forbid the injunction of certain state civil enforcement actions."  *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002).  Under the *Younger* doctrine, "federal courts should abstain from exercising their jurisdiction if (1) there is an ongoing state proceeding, (2) that implicates important state interests, and (3) that provides an adequate opportunity to raise any relevant federal questions."  *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012).  "In such circumstances, principles of comity and federalism preclude federal actions seeking injunctive or declaratory relief."  *Id.* at 1249.

In the Complaint, Plaintiff effectively asks the Court to enjoin the pending criminal case by asking the Court to dismiss that case.  Plaintiff's request falls squarely within the *Younger* doctrine.  *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ("When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.").  Accordingly, the Court should abstain from exercising its jurisdiction over the claims in the Complaint.  To the extent Plaintiff believes he has federal defenses to the criminal charge or arguments under federal law, he

14

will have an adequate opportunity to raise them in the criminal case. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607-11 (1975) (holding that *Younger* abstention applies to prevent federal court intervention in a state judicial proceeding in which a losing litigant has not exhausted his state appellate remedies); *see also Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1144 (8th Cir. 1990) ("[A] party cannot avoid *Younger* by choosing not to pursue available state appellate remedies."). The Court recommends dismissal of Plaintiff's claims against the Judicial Defendants under the *Younger* abstention doctrine.

## D.    The Judicial Defendants Are Immune from Suit.

Even to the extent that there is proper jurisdiction, "the Court also recommends dismissal of the Complaint as to the Judicial Defendants under the doctrine of judicial immunity. "[G]enerally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. "The doctrine therefore applies to suits for injunctive relief as well as claims for money damages." *Edlund v. Montgomery*, 355 F. Supp. 2d 987, 990 (D. Minn. 2005) (Loken, J.). "[I]mmunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11 (citations omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* "This narrow exception to the doctrine of judicial immunity applies only when a judge hears a case that is clearly beyond her judicial authority, such as a probate judge trying a criminal case." *Edlund*, 355 F. Supp. 2d at 990.

Neither of the two exceptions to judicial immunity apply here. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. As to the first exception, the issuance of harassment restraining orders is a function normally performed by a judge, and the orders were issued in the course of normal judicial proceedings. As to the second exception, the Judicial Defendants, as state court judges, had both jurisdiction and authority to issue harassment restraining orders. *See* Minn. Stat. § 609.748, subd. 2 ("Restraining order; jurisdiction. A person who is a victim of harassment may seek a restraining order from the district court in the manner provided in this section."); *see generally Irwin v. Goodno*, 686 N.W.2d 878, 880 (Minn. Ct. App. 2004) "District courts are courts of general jurisdiction and have the power to hear all types of civil cases, with a few exceptions, and appellate jurisdiction as prescribed by law.") (citing Minn. Const. art. VI, § 3). To the extent Plaintiff contends the Judicial Defendants lacked jurisdiction over him due to his "expatriation" or status as an "American state national," as explained above, those arguments have no basis in the law. *See Klaudt*, 2010 WL 5391571, at *4; *Fisherman*, 2016 WL 3961939, at *3. Accordingly, the Court recommends dismissal of the claims against the Judicial Defendants because they are immune from suit for the acts Plaintiff challenges in his Complaint.

**E.    Plaintiff's Request for Damages Against Defendants in Their Official Capacities is Barred by the Eleventh Amendment.**

Although Plaintiff did not reference § 1983 in his Complaint, he appears to seek injunctive relief by demanding "Respondents shall dismiss all actions in violation of petitioner's prerogative rights."  (Dkt. No. 1.)  It is unclear how the Court could order the Defendants in their **individual** capacity to "dismiss all actions in violation of petitioner's prerogative rights."  Accordingly, the Court liberally construes the Complaint as asserting a § 1983 claim against the Judicial Defendants in their official capacities as well as "individually."

The Judicial Defendants argue that, to the extent Plaintiff has sued them in their official capacity, Plaintiff's claim for damages is barred by the Eleventh Amendment. The Court agrees.  The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations and footnotes omitted).  Eleventh Amendment immunity extends to claims against state officials for damages and retrospective relief since "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and] is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *see also Morstad v.*

17

*Department of Corrections and Rehabilitation*, 147 F.3d 741, 743 (8th Cir. 1998)

(finding that state employees sued in official capacities are not liable for damages under §

1983).  In this case, the State of Minnesota has not waived its immunity from § 1983

claims, nor has it consented to suit.  *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89

(D. Minn. 1985) (finding that waiver of immunity by a state will be found "only where

stated 'by the most express language or by such overwhelming implications from the text

as [will] leave no room for any other reasonable construction.'") (quoting *Fla. Dep't of

Health & Rehabilitation Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981)).

The Court therefore lacks jurisdiction over any such claim for damages against the

Judicial Defendants in their official capacities.  *Seminole Tribe of Fla. v. Florida*, 517

U.S. 44, 64-65 (1996) (finding that when a lawsuit is barred by the Eleventh Amendment,

the case must be dismissed for lack of subject matter jurisdiction).  Moreover, the Judicial

Defendants are not "persons" who may be subject to suit under § 1983.  *Will*, 491 U.S. at

71 (while "state officials literally are persons[,] . . . a suit against a state official in his or

her official capacity is not a suit against the official but rather is a suit against the

official's office").  Accordingly, the Court recommends dismissal of any such claim.[8]

## F.     The Complaint Fails to State a Claim for Relief Against the Judicial Defendants.

The Judicial Defendants also argue that Plaintiff's claims against them should be

dismissed under Federal Rule of Civil Procedure 12(b)(6).  Based on the record before

---

[8]     Any claim for injunctive relief against the Judicial Defendants in their official capacities would confirm that they are immune from suit in this action.

the Court, Plaintiff complains of the criminal charge against him for alleged violations of the harassment restraining orders and his subsequent arrest and detention. Neither of the Judicial Defendants signed the criminal complaint or order for detention and neither is presiding over the criminal case. Indeed, the Plaintiff has failed to allege any facts plausibly supporting any Judicial Defendants' "personal involvement or responsibility" for the arrest, charge, or detention.[9] *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (affirming dismissal of § 1983 claims). The Court recommends that Plaintiff's claims against the Judicial Defendants be dismissed for failure to state a claim upon which relief can be granted.

**G.    The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims Against the Other Defendant, Karrie Kelly.**

The Court turns to Plaintiff's claims against the non-judicial defendant, Karrie Kelly. While Kelly has not filed a motion to dismiss, the Court is required to raise jurisdictional issues *sua sponte*. *See Thomas*, 931 F.2d at 523. Plaintiff's claims against Kelly arise from her prosecution of the pending criminal case. (*See generally* Dkt. Nos. 1, 21 ¶¶ 29-36.) Accordingly, Plaintiff's claims against Kelly are subject to *Younger* abstention. The Court lacks subject matter jurisdiction over Plaintiff's Complaint, and the Court recommends dismissal of Plaintiff's claims against Kelly.

---

[9]    The fact that the Judicial Defendants issued the underlying harassment restraining orders is too attenuated to plausibly create liability on their part for Plaintiff's arrest, charge, and detention. Further, as explained above in Section III.D, the Judicial Defendants are immune from suit for acts undertaken in connection with issuance of the harassment restraining orders.

**H.      The Complaint Should Be Dismissed with Prejudice.**

Ordinarily the Court would recommend dismissal under Rules 12(b)(1) and 12(b)(6) without prejudice. *See County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent."); *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983) ("Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."). "Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate." *Sellors v. Obama*, Case No. 13-cv-2484 SRN/JSM, 2014 WL 1607747, at *14 (D. Minn. April 15, 2014) (collecting cases).

Here, Plaintiff's claims are premised on his legally incorrect belief that he need not comply with Minnesota state law and that Minnesota state courts have no jurisdiction over him because he is a self-styled "natural born American state national" who has allegedly expatriated from the United States and the State of Minnesota. (*See, e.g.*, Dkt. No. 1; Dkt. No. 21 ¶¶ 14, 19, 23-27, 29-36.) Such arguments have been unequivocally rejected by courts. *See, e.g.*, *Fisherman*, 2016 WL 3961939, at *3 ("Appellant argues that he is a 'sovereign citizen,' exempt from the laws of Minnesota, and that the district court therefore lacked jurisdiction. Appellant's 'sovereign citizen' jurisdictional defense has 'no conceivable validity in American law.'") (quoting *Schneider*, 910 F.2d at 1570); *Klaudt*, 2010 WL 5391571, at *4 ("'Contrary to [plaintiff's] contention, there is no language in the Expatriation Act of 1868 [or subsequent amendments to it] to suggest that

20

Congress intended to immunize expatriated defendants from criminal charges committed within the United States.'") (quoting *People v. Jones*, 140 P.3d 325, 328 (Colo. Ct. App. 2006)); *Estate of Casimir*, 2009 WL 2778392, at *5 ("A person found within the United States cannot somehow exempt himself or immunize himself from the application of state or federal law by declaring himself a non-citizen or a diplomat."). Because Plaintiff's claims are based on a legally flawed premise, the Court is convinced that the defects in the Complaint cannot be cured through re-pleading. Accordingly, the Court recommends the Complaint be dismissed with prejudice.

## IV.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Judicial Defendants' Motion to Dismiss (Dkt. No. 8) be **GRANTED**;

2. Plaintiff's claims against The Honorable Terrance M. Walters and The Honorable Debra A. Jacobson be **DISMISSED WITH PREJUDICE**.

3. Plaintiff's claims against Karrie Kelly be **DISMISSED WITH PREJUDICE**.

4. Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

DATED: November 15, 2018               *s/Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

**<u>NOTICE</u>**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).